SEAN K. KENNEDY (No. 145632)
Federal Public Defender
(E-mail: Sean_Kennedy@fd.org)
YASMIN CADER (No. 250762)
Deputy Federal Public Defender
(E-mail: Yasmin_Cader@fd.org)
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone (213) 894-7560
Facsimile (213) 894-0081

Attorneys for Defendant
SINH VINH NGO NGUYEN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, </br></br> Plaintiff, </br></br> v. </br></br> SINH N VINH NGO GUYEN, </br></br> Defendant. | NO. CR 13-736-JFW </br></br> OBJECTION TO GOVERNMENT'S SUBMISSION PURSUANT TO SECTION 4 OF THE CLASSIFIED INFORMATION PROCEDURES ACT |

Defendant, Sinh Vinh Ngo Nguyen, by and through his/her counsel of record, Deputy Federal Public Defender, Yasmin Cader, hereby objects to the Government's Submission Pursuant to Section 4 of the Classified Information Procedures Act.

//
//
//
//
//
//
//
//

## I. INTRODUCTION

On October 16, 2013, the government noticed its intent to invoke the procedures set out in the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. 3, in this case. On October 25, 2013, the government filed an ex parte, in camera filing with the Court. The public portion of that document states only that the government filed a supplemental notice of intent to invoke CIPA. From conversations with government counsel, the defense knows only that the filing contains some classified document, not what it was or for what purpose it was filed. It is assumed, for purposes of this motion, that the request was to limit disclosure of information that is the subject of one of the defense's discovery requests under Section 4 of CIPA.

As detailed below, it is requested that the Court deny the government's request to file its Section 4 application ex parte and compel disclosure thereof to counsel. If the Court will not so, however, the defense requests that the Court consider one or more proposed steps in order to ensure greater fairness to the defense in the CIPA process.

## II. ANALYSIS

### A. General Principles Governing CIPA

Section 4 of CIPA permits the Court to allow the government to delete, summarize, or substitute specified items of classified information before providing the items on discovery, but only "upon a sufficient showing" that full production would pose a reasonable danger to national security. 18 U.S.C. app. 3. § 4; *United States v. Abu-Jihaad*, 630 F.3d 102, 141 (2d Cir. 2010) (the "state secrets" privilege to withhold information under CIPA section 4 applies only if "there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged."). CIPA "does not expand or restrict established principles of discovery and does not have a substantive impact on the admissibility of probative evidence." *United States v. Sedaghaty*, 728 F.3d 885, 903 (9th Cir. 2013) (quoting *United States v. Johnson*, 139 F.3d 1359, 1365 (11th Cir. 1998)).

The Ninth Circuit has set out a three-step process for considering motions to withhold classified information from discovery: First, the Court must determine whether the information at issue is discoverable under the relevant rules and statutes governing discovery. *Sedaghaty*, 728 F.3d at 904. If it is, the Court must next determine whether the government has made a formal claim of the state secrets privilege, "'lodged by the head of the department which has actual control over the matter, after actual personal consideration by that officer." *Id.* (quoting *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998)). If both tests are met, the Court must determine whether the evidence is "relevant and helpful to the defense of an accused." *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957); *Sedaghaty*, 728 F.3d at 904. Information can be relevant and helpful without rising to the level that would trigger the Government's obligation under *Brady v. Maryland*, to disclosure exculpatory information. *United States v. Aref*, 533 F.3d 72, 80 (2d Cir. 2008); *United States v. Amawi*, 695 F.3d 457 (6th Cir. 2012).

If the information meets the "relevant and helpful" test, CIPA permits the Court to decide the terms of discovery, i.e., to permit substitutions, or summaries, or to allow the government to stipulate to the relevant facts. The substitution or summary must "provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information." 18 U.S.C. app. 3 § 6(c)(1). The "fundamental purpose of a substitution under CIPA is 'to place the defendant, as nearly as possible, in the position he would be in if the classified information ... were available to him.'" *Sedaghaty*, 728 F.3d at 905 (reversing and remanding for new trial where errors included incomplete and biased summary).

//
//
//
//
//

B.  **CIPA's Ex Parte Provision is Discretionary, and the Court Should, In Its Discretion, Deny the Government's Request for Ex Parte Treatment of its Application**

Section 4 authorizes a court to accept government pleadings – and by implication to conduct the entire analysis set forth above – ex parte. 18 U.S.C. App. 3 § 4. However, because §4 states only that "[t]he court *may* permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone[,]" *id.* (emphasis added), there exists no categorical impediment to disclosure or adversary proceedings. Nothing in the statute permits the government to make such ex parte submissions as a matter of right. Rather, the use of the permissive "may " in the plain text of CIPA §4, rather than the mandatory "shall," makes clear that courts retain discretion to reject ex parte submissions on a case-by-case basis.

Congress patterned the ex parte provision of CIPA §4 on a similar provision in Federal Rule of Criminal Procedure 16(d)(l), which governs protective orders in criminal cases. Rule 16(d)(1), too, does not use the words "must" or "shall." Instead, Rule 16(d)(l) states that a court "may" permit a party to show good cause for a protective order through an ex parte statement. Congress amended the language of proposed Rule 16(d)(l) from requiring ex parte proceedings at the request of a party to permitting such proceedings. The House Judiciary Committee observed that in determining whether to proceed ex parte, a court should "bear [] in mind that ex parte proceedings are disfavored and not to be encouraged." Rule 16, Fed. R.Crim. P., Advisory Committee Notes.

In contrast, when Congress intends to require ex parte proceedings in the national security setting, it knows how to articulate that mandate. For example, in the Foreign Intelligence Surveillance Act ("FISA), Congress declared that the Court "shall" review FISA applications, orders, and related materials ex parte if the Attorney General submits an affidavit asserting that an adversarial proceeding would harm national security. See 50 U.S.C. §1806(f) (2000).

//

As a result of the foregoing analysis, rooted in the Fifth Amendment's Due process Clause, it is respectfully submitted that, absent exceptional circumstances, the government should not be permitted to file its § 4 application ex parte.

In addition to the discretion explicitly vested in the Court in Section 4 – discretion that is meaningless if exercised only in one direction – the traditions of and experience in the adversary system justify requiring disclosure of the § 4 application to cleared defense counsel.

1. Ex Parte Proceedings Are Exceedingly Disfavored

As a threshold matter, ex parte proceedings are exceedingly disfavored. As the Ninth Circuit has observed, "ex parte proceedings are anathema in our system of justice." *Guenther v. Commissioner of Internal Revenue*, 889 F.2d 882, 884 (9th Cir. 1989), appeal after remand, 939 F.2d 758 (9th Cir. 1991). By their very nature, ex parte proceedings impair the integrity of the adversary process and the criminal justice system. As the Supreme Court has recognized, "'[fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights . . . . No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it.'" *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 55 (1993) (in absence of exigent circumstances, due process clause requires government to provide notice and meaningful opportunity to be heard before seizing real property subject to civil forfeiture), quoting *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 170-72 (1951 (Frankfurter, J., concurring).

Similarly, in *United States v. Abuhamra*, 389 F.3d 309 (2d Cir. 2004), the Second Circuit reemphasized the importance of open, adversary proceedings, declaring that "[p]articularly where liberty is at stake, due process demands that the individual and the government each be afforded the opportunity not only to advance their respective positions but to correct or contradict arguments or evidence offered by the other." *Id.* at 321. *See also id.* ("[e]x parte submissions may generally not be received in opposition

to bail release because such submissions compromise both a defendant's due process right to a fair hearing and the public's interest in open criminal proceedings").

As the Ninth Circuit observed in the closely analogous context of a secret evidence case, "[o]ne would be hard pressed to design a procedure more likely to result in erroneous deprivations. . . . [T]he very foundation of the adversary process assumes that use of undisclosed information will violate due process because of the risk of error." *American-Arab Anti-Discrimination Committee v. Reno*, 70 F.3d 1045, 1969 (9th Cir. 1995) (internal quotation marks and citation omitted).

        2.      The Court Is Not Sufficiently Equipped to Act As Surrogate Defense Counsel

Thus, to ensure both the appearance and the reality of fairness, it is respectfully submitted that the Court should not permit the government to proceed ex parte without first making an adequate showing of the need for such drastic measures. The defense has requested security clearances for members of the defense team, and the government has said that, in theory it does not object, although it maintains that the defense does not have a "need to know" the classified information. *But see United States v. Amawi*, 695 F.3d 457, 473 (6th Cir. 2012) (government should not refuse to process security clearances until the Court has weighed in on the classified information; doing so assumes that the Court will share the government's view of the evidence, and risks significant delay, if the Court does not share its view). If security clearance is achieved, however, the government could plausibly contend that sharing its § 4 submission under the protections of a CIPA protective order would endanger national security. *See United States v. Libby*, 429 F. Supp.2d at 4 (recognizing that "there are fewer threats to national security in disclosing classified documents to a defendant and his attorney who have obtained security clearances, than when disclosure is made to someone who has not received security clearances"). Thus, barring cleared defense team members from participating in discovery determinations cripples the adversary process without any commensurate benefit to national security.

Defense counsel are not clairvoyant, and cannot predict and challenge blindly the government's position. Without access to either the classified evidence or the government's arguments for non-production, Mr. Nguyen will be deprived of his right to counsel at this stage, and of the other fair trial rights to which he is constitutionally entitled. And, just as importantly, without defense counsel's participation in the process of evaluating the material and crafting substitutions, Mr. Nguyen cannot possibly be said to have been placed in the same position as he would if he enjoyed unrestricted access to either witnesses or the specific classified information.

Also, ex parte proceedings with respect to discovery present an overwhelming danger of erroneous decisions. Despite what defense counsel knows will be the Court's best efforts, the Court cannot properly function as Mr. Nguyen's surrogate advocate. The Court cannot possess sufficient appreciation for defense theories in a particular case, particularly at this state of the case, at which the Court would not have sufficient knowledge and understanding of critical facts, factual issues, or contentions, or knowledge of impeachment issues, the nature of government and defense exhibits, and perhaps the defendant's testimony. Thus, the relevance or materiality, or the exculpatory character of evidence, is not readily apparent except to those with intimate knowledge of the factual details as well as the full scope of the discovery produced to date. *See Alderman v. United States*, 394 U.S. 165 (1969) (rejecting the government's suggestion that the district court determine the impact of government eavesdropping ex parte, observing that "[a]n apparently innocent phrase, a chance remark, a reference to what appears to be a neutral person or event, the identity of a caller or the individual on the other end of a telephone, or even the manner of speaking or using words may have special significance to one who knows the more intimate facts of an accused's life. And yet that information may be wholly colorless and devoid of meaning to one less well acquainted with all relevant circumstances.") *Id.* at 182.

//

//

In this context, adherence to the adversary process would have considerable salutary effect on the accuracy of decision-making in this instance. It is not the Court's function, but defense counsel's, to be the vigorous advocate on behalf of the defendant and point out any deficiencies in the government's response. As the Supreme Court has recognized, "[i]n our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate." *Dennis v. United States*, 384 U.S. 855, 875 (1966).

### C. The Court Should, At Least, Disclose the Government's Legal Theories that Behind the Claimed Restriction in Discovery

Defense counsel are at a significant disadvantage not being privy to the *facts* relevant to the government's CIPA § 4 submission. But there is no reason why the legal theories should not be disclosed to counsel, enabling counsel to present meaningful opposition to the legal points raised by the government. Even without knowing the specifics of the classified information, the defense may have helpful rebuttal concerning the interpretation of the applicable discovery rules, or the helpfulness of certain general categories of information. To the extent that the defense can be included in the conversation regarding the *legal* disputes, it should be.

### D. If the Court Permits the Government to Proceed Ex Parte, It Should Hold An Ex Parte Hearing with the Defense Regarding Its Case.

If the Court permits the government to proceed *ex parte*, the Court will have to decide what is "helpful and relevant" to the defense without having the defense's position on that point. This puts the Court in an unusual situation: As the Sixth Circuit recently recognized, because CIPA does not have the benefit of the adversarial process, "[the Court] must place [itself] in the shoes of defense counsel, the very ones that cannot see the classified record, and act with a view to their interests." *See United States v. Amawi*, 695 F.3d 457, 471 (6th Cir.2012) (citation omitted).

To facilitate this process, if the Court believes that ex parte proceedings are appropriate, it should allow the defense an ex parte hearing outside of the presence of the government so that it can have an opportunity to discuss its theories of the case. CIPA section 2 permits either party to request a hearing at which the Court can consider "any matter which relates to classified information or to promote a fair and expeditious trial." In this case, a hearing with the defense will better permit the Court to understand what information might be relevant and helpful to the defense. See, e.g., *United States v. Sulaiman Abu Ghayth*, CR 98-1023 (LAK) (S.D.N.Y. August 19, 2013), Docket # 1285 (ordering in the context of a CIPA §4 submission by the government that "to permit the Court to be better informed to make the judgments called for by the government's CIPA motion . . . the Court will meet . . . ex parte with the defense to be better informed of the defenses they plan to present" in addition to meeting with the government as to the same); *United States v. Babar Ahmad*, CR 04-301 (JCH) (D. Conn. April 15, 2013), Docket #72 (calendering an ex parte hearing regarding the government's CIPA filing, at which the Court would also "hear an ex parte presentation from the defense, as per their request, to assist the court in making its Section 4 determination"). While the defense does not believe that this process is adequate to fully protect the defendant's interest, and thus does not concede the above points regarding the appropriateness of the ex parte proceeding, such a hearing would somewhat reduce the risk of erroneous conclusions regarding the helpfulness of information to the defense.

The government should be excluded from this conversation, and the information revealed in this hearing kept confidential. During the hearing, counsel would candidly discuss trial strategy, including (a) attorney/client privileged material that, if disclosed, would violate Mr. Nguyen's Fifth Amendment right against self-incrimination, and (b) attorney work product protected trial strategy that is not discoverable to the government under Federal Rule of Civil Procedure 16. Mr. Nguyen has a right against disclosing the information contained herein, and need not forfeit that right in order to better inform the Court's decisions under CIPA Section 4. *Cf. United States v. Eshkol*, 108 F.3d 1025,

1027 (9th Cir. 1997) (in the context of a motion to dismiss for pre-indictment delay, recommending the practice of the defense submitting its proffer on prejudice in camera, so as to protect defendant's Fifth Amendment rights and trial strategy); *see also United States v. Hicks*, 103 F.3d 837 (9th Cir. 1996) (defense has no obligation to produce any evidence to the government except as provided in Rule 16).

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: October 30, 2013          By  /s/ *Yasmin Cader*
                                      YASMIN CADER
                                      Deputy Federal Public Defender